**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DARIUS B. THOMAS,

        Petitioner,                            Case Number: 2:06-CV-12757

v.                                                 HON. MARIANNE O. BATTANI

BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Darius B. Thomas has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. Petitioner is currently incarcerated at the St. Louis Correctional Facility, in St. Louis, Michigan, pursuant to a conviction for second-degree murder and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

**I. Facts**

Petitioner's convictions arise from the shooting death of Glenn Dunnum in the City of Detroit on July 4, 2001.

Dr. Cheryl Loewe, Wayne County Assistance Medical Examiner, testified that Dunnum died from multiple gunshot wounds, including a close-range shot to his chest which caused major damage to the aorta resulting in significant blood loss.

Lacresha Garrett testified that, at approximately 4:30 p.m., on July 4, 2001, she and her fiancé, Dunnum, were walking down a street in Detroit, when they saw Petitioner walking

toward them. Petitioner asked Dunnum why he had called the police on Petitioner. Dunnum denied calling the police. Garrett testified that Petitioner then pulled out a weapon and fired five times at Dunnum.

Jason Ivey testified that he was stopped at a red light when he saw two males and a female standing nearby. He saw one male shoot the other and heard three shots before driving away. He may have heard an additional shot as he was driving away. He was unable to provide a description of the gunman, other than the observation that he was a black male 5'7" to 5'8".

Petitioner did not testify in his own defense.

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder and felony firearm. On November 1, 2002, he was sentenced to twenty-two to thirty-three years imprisonment for the murder conviction, to be served consecutively to two-years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims through counsel:

- I. The trial court committed reversible error and denied Mr. Thomas his state and federal constitutional rights to a fair trial by an impartial and properly instructed jury, by instructing the jury – over objection – on the lesser offense of second-degree murder, where the killing, as described by witnesses, was manifestly a first-degree murder.

- II. Mr. Thomas was denied his state and federal constitutional rights to due process of law and a fair trial through misconduct of the prosecutor, which consisted of an improper, burden shifting argument.

Petitioner raised the following additional claims in a *pro se* supplemental brief:

- I. Mr. Thomas was denied his state and federal constitutional rights to the due process of law and a fair trial through misconduct of the prosecutor, which

2

consisted of misstating the evidence presented at trial.

II. Mr. Thomas was denied his state and federal constitutional rights to due process of law and a fair trial through misconduct of the prosecutor, which consisted of stating facts to the jury that [weren't] supported by the evidence in closing arguments.

III. Mr. Thomas was denied his state and federal constitutional rights to due process of law and a fair trial through ineffective assistance of counsel at trial.

IV. The cumulative effect of the multiple errors at trial deprived the defendant of his state and federal constitutional rights to due process and a fair trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Thomas*, No. 246819 (Mich. Ct. App. Sept. 23, 2004). The court also denied his motion for an evidentiary hearing to expand the record on his ineffective assistance of counsel claim. *People v. Thomas*, No. 246819 (Mich. Ct. App. Sept. 10, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Thomas*, No. 127381 (Mich. June 28, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised on direct review in state court.

### III. Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Discussion

### A. Jury Instruction Claim

Petitioner claims that his right to a properly instructed jury was violated when the trial court gave a second-degree murder instruction over Petitioner's objection at trial.

Generally, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "[I]t must be established not merely that the

4

instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72, *quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

The last state court to issue a reasoned opinion regarding Petitioner's jury instruction claim, the Michigan Court of Appeals, stated, in pertinent part:

> In *People v Cornell*, 466 Mich. 335, 358; 646 N.W.2d 127 (2002), our Supreme Court overruled *People v Jenkins*, 395 Mich. 440; 236 N.W.2d 503 (1975), which had held that in a first-degree murder trial, the trial court is always to instruct the jury on the lesser-included offense of second-degree murder. *Cornell* stated that even in a first-degree murder trial, a jury is to be instructed on a necessarily included lesser offense only if the greater offense requires the jury to find a disputed factual element that is not part of the lesser offense and a rational view of the evidence at trial would support such an instruction. Second-degree murder is a necessarily lesser-included offense of first-degree murder. Thus, the resolution of this issue turns on whether "the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."
>
> * * *
>
> A rational view of the evidence presented in this case showed that premeditation and deliberation were in dispute. There was evidence that defendant was carrying a gun when he approached the victim. Defendant angrily confronted the victim about the victim having reported defendant to the police. Defendant shot the victim multiple times, inflicting critical wounds to the victim's left lung, left ventricle, and aorta. These facts could reasonably support the conclusion that the killing was done with premeditation and deliberation. Conversely, the evidence also reasonably supports a finding that the killing was done in "hot blood," the result of a chance and volatile meeting between defendant and the victim. Therefore, because a rational view of the evidence showed that premeditation and deliberation were in dispute, the trial court did not err when it instructed the jury on second-degree murder.

*Thomas,* slip op. at 1-2.

5

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent, or that the trial court's decision to instruct on second-degree murder so infected the entire trial as to result in a due process violation. The state court's conclusion that the evidence warranted a second-degree murder instruction is amply supported in the record. Accordingly, Petitioner has failed to show that the trial court violated his right to due process with respect to the jury instructions.

### B. Alleged Prosecutorial Misconduct

Petitioner next claims that the prosecutor engaged in misconduct. Specifically, Petitioner claims that the prosecutor: (i) improperly shifted the burden of proof; (2) misstated the evidence; and (3) argued facts that were not in evidence.

Respondent argues that the first claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of prosecutorial misconduct claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of

the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 964 (*quoting Angel,* 682 F.2d at 608).

First, Petitioner claims that the prosecutor improperly shifted the burden of proof when she stated, in closing argument:

> I'm asking you to do something Darius Thomas is not willing to do. He's not willing to own up to his actions, to accept responsibility of what he did. . . . I'm asking you to put that responsibility on him and find him guilty.

Tr., 10/31/02, pp. 153-54.

The Michigan Court of Appeals held that the objected-to comment did not serve to shift the burden of proof. Instead, the comment asked the jury to convict based upon the argument that all of the elements of the crime had been proven. While the prosecutor's comment, viewed in isolation, borders on being a comment on the Petitioner's failure to testify at trial, read in context, it is clear that the prosecutor was asking the jury to hold Petitioner accountable for the crime which, the prosecutor argued, the evidence showed Petitioner committed.

Next, Petitioner claims that the prosecutor committed misconduct by misstating the

7

evidence presented at trial. The Michigan Court of Appeals held that the prosecutor did not engage in misconduct and that, even if the prosecutor did engage in the alleged misconduct, it did not implicate the fairness of the trial. The court of appeals reasoned, in pertinent part:

> First, defendant claims that the prosecutor incorrectly stated that Lacresha Garrett's trial testimony that defendant shot the victim five times was consistent with her preliminary exam testimony in July when, in fact, it was inconsistent because Garret testified at the preliminary examination that defendant shot the victim four times. Second, defendant claims that the prosecutor incorrectly stated that Jason Ivey's testimony corroborated Garrett's testimony that defendant fired the last shot while standing over the victim after the victim had fallen to the ground.
>
> Contrary to the prosecutor's closing argument, Garrett's preliminary examination testimony in August 2001 was that defendant shot "about four times," not five times. However, as defense counsel emphasized during cross-examination of Garrett, during a previous trial in July 2002, Garrett testified that defendant shot five times. The prosecutor may have mistakenly referenced the preliminary examination rather than the previous trial in commenting on Garrett's previous July testimony. With regard to misstatements about Ivey's corroboration, the prosecutor stated that Ivey corroborated the "big picture" given by Garrett, not the "little details." Further, during his testimony, Ivey denied that he saw the shooter shoot the victim while standing over him, denied telling that to the police, and testified that the police statement was incorrect in that regard. Viewed in context, any misstatements by the prosecutor were isolated and brief, and subject to evaluation by the jury in light of the testimony and evidence presented. We cannot conclude that any error affected defendant's substantial rights.
>
> Moreover, the trial court instructed the jury that the attorneys' statements were not evidence and that the case should be decided on the evidence. The trial court also emphasized defendant's presumption of innocence and the prosecutor's burden of proof on all of the elements in the case. Therefore, even if the prosecutor's comments were in error and prejudicial, the trial court issued instructions that cured any resulting prejudice that may have resulted.

*Thomas*, slip op. at 3.

This Court agrees with the state court's assessment of the prosecutor's argument. Therefore, habeas relief is denied on this prosecutorial misconduct claim

Finally, Petitioner argues that the prosecutor argued a fact not in evidence because, in her

8

closing statement, she stated that Petitioner was four to five inches taller than the victim and no evidence had been presented concerning Petitioner's height. The Michigan Court of Appeals held that the combined testimony of Lacresha Garrett and Jason Ivey supported the prosecutor's statement. In addition, the court of appeals noted that the jury had the opportunity to view defendant during the trial and could evaluate the prosecutor's statement on that basis. The court of appeals, therefore, held that the prosecutor's conduct was not improper. The court finds that, in light of Garrett and Ivey's testimony, the state court's conclusion was not contrary to or an unreasonable application of Supreme Court precedent and denies relief on this claim.

### C. Alleged Ineffective Assistance of Trial Counsel

Petitioner next claims that his trial attorney was ineffective in failing: (i) to object to prosecutorial misconduct; and (ii) to call witnesses, cross-examine witnesses and to investigate, interview and locate witnesses.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at

9

689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

As discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct. Therefore, he cannot establish that his attorney was ineffective in failing to object to proper prosecutorial conduct.

Petitioner also claims that his attorney was ineffective in failing to call witnesses, failing to cross-examine James Ivey, waiving witnesses without Petitioner's consent, and failing to interview, investigate and locate witnesses. The Michigan Court of Appeals denied Petitioner's claim that his attorney was ineffective in failing to cross-examine James Ivey. The state court held that Petitioner failed to show that counsel could have elicited favorable testimony had he cross-examined James Ivey. Petitioner has presented no evidence to show that the state court's conclusion that counsel could have elicited favorable testimony from James Ivey was incorrect. Therefore, the Court finds that the state court's conclusion in this regard was not contrary to or an unreasonable application of Supreme Court precedent.

The state court also denied Petitioner's claim that counsel was ineffective in failing to

call Arthur Simmons and Ollie Norman as witnesses and failing to interview, investigate and locate witnesses.

>Under *Strickland*, trial counsel has a duty to investigate:
>
>Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citation omitted).

The state court held that counsel's decision not to call certain witnesses was reasonable because these witnesses' testimony would have corroborated testimony which incriminated Petitioner. Additionally, Petitioner fails to provide adequate support for his conclusory claims that his attorney should have conducted further investigation or pretrial preparation. A conclusory claim, not supported by facts, will not entitle a petitioner to habeas corpus relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir.1991). Accordingly, Petitioner fails to show that the state court's opinion was contrary to or an unreasonable application of Supreme Court precedent.

### D. Cumulative Error

In his final claim, Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. *See Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *Moore v. Parker,* 425 F.3d 250 (6th Cir. 2005) (same). Moreover, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on his cumulative errors claim.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2008